ADANTÉ D. POINTER (SBN 236229)
PATRICK M. BUELNA (SBN 317043)
**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**
155 Filbert St., Suite 208,
Oakland, CA 94607
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

MICHAEL A. SLATER (SBN 318899)
**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**
633 West 5th St., Suite 2627
Los Angeles, CA 90071
Tel: 510-929-5400
Email: MSlater@LawyersFTP.com

Attorneys for Plaintiffs
Lance David Mayra Najera, B.N, M.N and L.N.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE DAVID, an individual; MAYRA NAJERA, an individual; B.N., a minor, by and through their Guardian Ad Litem, LANCE DAVID; M.N., a minor, by and through their Guardian Ad Litem, LANCE DAVID; and L.N., a minor, by and through their Guardian Ad Litem, LANCE DAVID,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, a California public entity; BARRY BALLANCE, an individual; MATTHEW ORR, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 2:25-at-00227<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1)** Excessive Force in violation of the Fourth Amendment (42 U.S.C., § 1983)<br><br>**(2)** Unlawful Arrest in violation of the Fourth Amendment (42 U.S.C., § 1983)<br><br>**(3)** Retaliation in violation of the First Amendment (42 U.S.C., § 1983)<br><br>**(4)** Failure to Intervene (42 U.S.C., § 1983)<br><br>**(5)** Battery (Cal. Gov. Code, § 820)<br><br>**(6)** Violation of the Tom Bane Civil Rights Act (Cal. Civ. Code, § 52.1)<br><br>**(7)** Negligence (Cal. Gov. Code, § 820)<br><br>**DEMAND FOR JURY TRIAL** |

///

COMPLAINT FOR DAMAGES

1

## COMPLAINT FOR DAMAGES

Plaintiffs Lance David, Mayra Najera, B.N, M.N and L.N. (collectively, "Plaintiffs"), for their Complaint for Damages against Defendants County of Stanislaus, Barry Ballance, Matthew Orr and DOES 1 through 20, inclusive (collectively, "Defendants"), hereby allege as follows:

## INTRODUCTION

1. Of all the ways the Defendant Deputies of the Stanislaus County Sheriff's Department could have been spending their time and resources on the afternoon of June 9, 2024, like a horde going into battle, they descended upon families picnicking peacefully at the Woodward Reservoir Recreation Area in Valley Home – not in response to a reported crime or because they were needed in any way, but instead to write parking tickets, ostensibly.

2. When certain picnickers (one, a pregnant woman) went only so far as to question the Defendant Deputies about the suddenness and urgency with which they were enforcing parking rules on that slow Sunday afternoon – the absolute lowest of law enforcement priorities, if it can be even said to be one – the Defendant Deputies told the picknickers to "follow the fucking rules" and that it would be "wonderful" if they never returned to the park again.

3. Struck by the Defendant Deputies' extraordinary discourtesy and aggression, Plaintiff Lance David, in a clear exercise of his First Amendment rights, called them out (verbally) for their conduct, in direct response to which the Defendant Deputies pushed Mr. David to the ground and electrocuted him four separate times with their tasers. They did so despite the fact that Mr. David posed no threat to them or anyone else at any point that day. Their conduct was baldly retaliatory and in violation of Mr. David's constitutional rights and dignity.

4. Mr. David's family, including his wife, Mayra Najera, and three children, witnessed the Defendant Deputies' retaliatory abuses against Mr. David in horror.

5. Not done yet, the Defendant Deputies arrested Ms. Najera (who they knew was pregnant) for nothing more than filming the uses of force unlawfully employed against Mr. David and for speaking out against them, which was her First Amendment right to do. Meanwhile, Ms. Najera's mother wailed disturbingly that she wanted to die as she watched the Defendant Deputies arrest her

daughter and son-in-law and tell her six-year-old grandson to "get the fuck back!" and that he was "going to get tased next!"

6. Concerned members of the public filmed and questioned the bald abuses of power they were witnessing, to which the Defendant Deputies told them to "shut the fuck up" and that they would "go to jail" if they kept "running [their] mouth[s]!"

7. This lawsuit seeks justice for the extraordinary violations of state and federal law committed against Plaintiffs by members of the Stanislaus County Sheriff's Department, who chose to terrorize peaceful members of the public doing nothing except trying to enjoy their Sunday afternoon with their families.

## THE PARTIES

8. At the times of the violations of law alleged herein, and continuing to the present time, Plaintiff Lance David was and remains a competent adult and a resident of Stockton, California. Mr. David is the biological father of Plaintiffs B.N., M.N. and L.N. Mr. David brings this lawsuit on his own behalf and as Plaintiffs B.N., M.N. and L.N.'s Guardian Ad Litem.

9. At the times of the violations of law alleged herein, and continuing to the present time, Plaintiff Mayra Najera was and remains a competent adult and a resident of Stockton, California. Ms. Najera is the biological mother of Plaintiffs B.N., M.N. and L.N.

10. At the times of the violations of law alleged herein, Plaintiff B.N resided and, at the present time, continues to reside in Stockton, California with her mother, Plaintiff Mayra Najera, and her father, Plaintiff Lance David. At the times of the violations of law alleged herein, and continuing to the present time, Plaintiff B.N. was and continues to be a minor, having been born in 2013.

11. At the times of the violations of law alleged herein, Plaintiff M.N resided and, at the present time, continues to reside in Stockton, California with her mother, Plaintiff Mayra Najera, and her father, Plaintiff Lance David. At the times of the violations of law alleged herein, and continuing to the present time, Plaintiff M.N. was and continues to be a minor, having been born in 2014.

12 At the times of the violations of law alleged herein, Plaintiff L.N resided and, at the present time, continues to reside in Stockton, California with his mother, Plaintiff Mayra Najera, and

his father, Plaintiff Lance David. At the times of the violations of law alleged herein, and continuing to the present time, Plaintiff L.N. was and continues to be a minor, having been born in 2017.

13. Defendant County of Stanislaus (the "County") is a municipal public entity located within this judicial district and duly authorized and existing as such in and under the laws of the State of California. The County manages and operates the Stanislaus County Sheriff's Department, its SCSD Officers and the DOE Defendants identified herein. At the times of the violations of law alleged herein, the County was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the County, the SCSD and their employees / agents complied with the laws of the United States and the State of California.

14. Defendant Barry Ballance ("Defendant Ballance") is an individual who, at the times of the violations of law alleged herein, was employed as a Sheriff's Deputy by the Stanislaus County Sheriff's Department. At the times of the violations of law alleged herein, Defendant Ballance was acting under color of state law and within the course and scope of his employment with the SCSD. Defendant Ballance is being sued in his individual capacity and in his capacity as an SCSD law enforcement officer. On information and belief, Defendant Ballance is a resident of the State of California.

15. Defendant Matthew Orr ("Defendant Orr") is an individual who, at the times of the violations of law alleged herein, was employed as a Sheriff's Deputy by the Stanislaus County Sheriff's Department. At the times of the violations of law alleged herein, Defendant Orr was acting under color of state law and within the course and scope of his employment with the SCSD. Defendant Orr is being sued in his individual capacity and in his capacity as an SCSD law enforcement officer. On information and belief, Defendant Orr is a resident of the State of California.

16. Plaintiffs are ignorant of the true names and/or capacities of Defendants sued herein as DOES 1 through 20 (the "DOE Defendants") and, therefore, sue the DOE Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE Defendants when ascertained. Plaintiffs believe and allege that each of the DOE Defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each of the

DOE Defendants proximately caused Plaintiffs' injuries and damages because of their conduct, negligence, breach of duty, management and/or violation of public policy. Each DOE Defendant is liable for their personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, or control or upon any other act or omission. On information and belief, DOE Defendants are residents of the County of Stanislaus in the State of California.

17. All Defendants who are natural persons, including DOE Defendants, are sued individually and in their capacities as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the County / SCSD.

18. In doing the acts and/or omissions alleged herein, Defendants, including DOE Defendants, and each of them, acted within the course and scope of their employment with the County / SCSD, under color of authority and/or color of law.

19. Due to the acts and/or omissions alleged herein, Defendants, including the DOE Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

**JURISDICTION & VENUE**

20. This Court has original jurisdiction over Plaintiffs' federal law claims under 28 U.S.C. sections 1331 [federal question jurisdiction] and 1343(a)(3) [federal civil rights jurisdiction]. All claims for violations of the United States Constitution are brought pursuant to 42 U.S.C. section 1983. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. section 1367.

21. Venue is proper in this judicial district under 28 U.S.C. section 1391(b)(2), because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

22. Pursuant to the California Tort Claims Act, Plaintiffs presented a tort claim to the County on or about November 13, 2024 (within six months of the violations of law alleged herein), which the County rejected. As such, Plaintiffs have exhausted their administrative remedies.

### FACTUAL ALLEGATIONS

23. At approximately 6:30 p.m. on June 9, 2024, Plaintiffs Lance David, Mayra Najera and their three minor children, B.N., M.N. and L.N., were packing up their belongings after a BBQ they had that day with their friends and family in a public park along the west side of the Woodward Reservoir Recreation Area in Valley Home, California, when multiple SCSD Sheriff's Deputies approached the area purportedly on a parking enforcement mission.

24. When Mr. David politely asked SCSD Sheriff's Deputy Defendant Barry Ballance if he (Mr. David) could quickly park his vehicle in an area not technically designated for parking (but which was regularly used by park patrons to quickly load their vehicles – especially those larger items that are difficult to carry long distances) and quickly load his family's many belongings into his vehicle, Defendant Ballance responded dismissively. Specifically, the two men exchanged the following dialogue:

*Mr. David: "Hey, sir, I got one question – we can't be [park] here for five minutes?"*[1]

*Defendant Ballance: "No." [Inaudible.]*

*Mr. David: "Would you want to carry all of that to your car?"*

*Defendant Ballance: "Don't bring it all."*

*Mr. David: "So we won't come to the park no more."*

*Defendant Ballance: "Wonderful ... Don't come no more."*

25. Immediately after this, another park patron asked Defendant Ballance about the parking situation he and the other SCSD Sheriff's Deputies had made such an urgent issue of that afternoon,

---

[1] To be clear, Lance's vehicle was not parked illegally. Lance was asking Deputy Ballance if he could move his vehicle into a non-parking zone to quickly load it with his family's belongings.

in response to which Defendant Ballance said: *"Which one of you wants to follow the fucking rules? Follow the rules. You don't want to follow the rules; don't come here again. Ok?*

26. Upon hearing Defendant Ballance, Mr. David said to Defendant Ballance: *"Just because you got a fucking gun, you think you're a big guy."*

27. During the foregoing verbal exchange, the distance between Mr. David and Defendant Ballance continued to grow to approximately 20 feet, because Defendant Ballance was walking away from Mr. David. However, immediately after Lance made the "big guy" statement, and in response to it, Defendant Ballance pivoted back in Mr. David's direction and quickly moved towards Mr. David and said: "Come here! Hey! Come here!" In response, Mr. David made no significant movements in any direction. Mr. David remained relatively stationary.

28. As Defendant Ballance was making his way towards Mr. David, SCSD Sheriff's Deputy Defendant Matthew Orr also began moving towards Mr. David and even more quickly than Defendant Ballance. As Defendant Orr approached Mr. David, he drew his taser gun with his right arm and pointed it directly at Mr. David. Seeing the manner of their approach, Mr. David immediately lifted his hands up into the air and opened the palms of his hands – so that his palms were facing Defendant Orr – to demonstrate he was both unarmed and surrendering to them.

29. When Defendant Orr got to within approximately five feet of Mr. David, he ordered Mr. David to get down onto his knees and to put his hands behind his back. Hearing this, Mr. David quickly put his hands behind his back and turned his back slightly towards Defendant Orr to give Defendant Orr direct access to his hands and wrists – another clear indication of compliance and surrender. Immediately thereafter, Defendant Orr grabbed Mr. David by his wrists (with his left arm; not his right arm, which was still holding his taser gun), thereby securing him.

30. Now secured in Defendant Orr's grasp (but not in handcuffs), Mr. David stood idly. Mr. David continued to pose no threat to the SCSD Deputies or anyone else. He was neither resisting nor attempting to flee. Nonetheless, Defendant Orr screamed at Mr. David to drop down to his knees. Mr. David did not immediately drop down to his knees, however; because the ground on which he was standing was significantly sloped (moving downhill in front of him), the angle and length of decent would have made it both difficult and unsafe for him to drop to his knees at that moment.

31. At this point, Defendant Ballance had also reached and positioned himself directly in front of Mr. David with his taser gun drawn. As such, Mr. David was surrounded. Mr. David was, still, neither resisting nor attempting to flee. Either Defendant Ballance and/or Defendant Orr were in the midst of screaming at Mr. David to get on his knees, but had not yet completed the order (only getting to far as saying: "If you don't drop them [his knees]…") when Defendant Ballance deployed his taser, striking Mr. David on his stomach just above his genitals, puncturing his skin and electrocuting him. (The "First Taser Strike.")

32. As a result of the First Taser Strike, Mr. David's body became paralyzed[2] and he collapsed to the ground. As he was collapsing, and concurrently with the First Taser Strike, Defendant Orr deployed his taser into Mr. David's ribcage, puncturing his skin and sending a second set of electricity through his body. (The "Second Taser Strike.")

33. After collapsing to the ground as a result of the First and Second Taser Strikes, Mr. David came to rest on his back and in between Defendants Ballance and Orr – the latter of whom had, unsurprisingly, lost his grip of Mr. David as a result of Mr. David's downward movement along the sloped ground. As the First and Second Taser Strikes were still occurring, Defendants Ballance and Orr continued to scream at Mr. David to "get on the ground" and to "roll over" and to "get on [his] stomach." This is despite the fact that Mr. David was not in control of his body during this time because he was experiencing Neuromuscular Incapacitation (NMI) as a result of being tased.[3] Defendants Ballance and Orr either knew or should have known that their demands that Mr. David do specific things with his body while he was being electrocuted by them was a physical impossibility.

34. That didn't stop Defendants Ballance and Orr from continuing to abuse their authority even further. Immediately after the First and Second Taser Strikes (no more than one second passed), Defendants Ballance and Orr deployed yet another set of taser shots at Mr. David (one each) – this

---

[2] *See* Mattos v. Agarano, 661 F.3d 433, 443 (9th Cir. 2011) ["The electrical impulse of a taser strike instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless."].

[3] Neuromuscular Incapacitation (NMI) occurs when electrical pulses temporarily interfere with the command-and-control systems of the body, leading to the loss of muscle control.

**COMPLAINT FOR DAMAGES**

time striking Mr. David on the outside of his left leg (near his hip) and on the front side of his left leg (near his genitals), puncturing his skin in both places and sending another set of painful electrical currents through his body. (The "Third Taser Strike" and "Fourth Taser Strike," respectively; altogether collectively, the "Subject Taser Strikes.") This is despite the fact that Mr. David had, still, done nothing whatsoever to give any reasonable person the belief that Mr. David posed a threat to the SCSD Deputies or anyone else. Indeed, Mr. David was supine and not moving when the Third and Fourth Taser Strikes were deployed against him, (Altogether collectively, the "Subject Incident.")

35. All the while, Mr. David's family – including his wife, Plaintiff Mayra Najera and three minor children, Plaintiffs B.N, M.N and L.N. (collectively, the "Minor Plaintiffs") – witnessed the Subject Taser Strikes in horror.

36. In the numerous videos of the Subject Incident, Ms. Najera (who was pregnant) and the Minor Plaintiffs (and other witnesses) can be heard screaming and pleading for the SCSD Sheriff's Deputies to stop tasing Mr. David. After the Third and Fourth Taser Strikes had finally ended, Mr. David's six-year-old son, Plaintiff L.B., ran over to where his father's body was strewn on the ground, in response to which Defendant Orr screamed at the boy that he was "going to get tased next" and to "get the fuck back!"

37. Mr. David was subsequently secured in handcuffs by the SCSD Sheriff's Deputies, arrested for a purported violation of PC section 148(a)(1) (Resisting Arrest) and booked into the Stanislaus County Jail, where he spent the night away from his three grieving and traumatized children.

38. Despite the fact that Ms. Najera neither resisted arrest nor battered any SCSD officers during the Subject Incident, Ms. Najera was also arrested and booked into the Stanislaus County Jail for purported violations of PC section 148(a)(1) (Resisting Arrest) and PC section 243(b) (Battery on Peace Officer). The arrest and charges levied against Ms. Najera were a fraud.

39. In reality, Ms. Najera was arrested in retaliation for her speaking up against Defendants Ballance and Orr and for filming their horrific conduct – both of which were squarely within Ms. Najera's First Amendment rights to do. Indeed, Defendant Orr can be heard, throughout the Subject Incident and thereafter, screaming at witnesses who continued to observe and film what was occurring, things like: "Get the fuck back!" and "You want it next? Keep running your mouth!" Ms. Najera's

elderly mother can be heard in the background wailing in horror that she wanted to die and she pounded a picnic table with her fists.

40. As a direct and proximate result of the Subject Taser Strikes and his subsequent unlawful arrest, Mr. David suffered severe emotional distress, as well as physical and financial injuries in amounts to be proven at trial.

41. As a direct and proximate result of witnessing the Subject Taser Strikes against Mr. David, and as a direct and proximate result of her subsequent unlawful arrest, Ms. Najera suffered severe emotional distress and was damaged in amounts to be proven at trial.

42. As a direct and proximate result of witnessing the Subject Taser Strikes against Mr. David, the Minor Plaintiffs experienced severe emotional distress and were damaged in amounts to be proven at trial.

43. The Subject Taser Strikes Defendants employed against Mr. David were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Mr. David's safety, health and wellbeing.

## FIRST CLAIM FOR RELIEF

**Excessive Force in Violation of the Fourth Amendment (42 U.S.C., § 1983)**

**By Plaintiff Lance David Against Defendants Barry Ballance, Matthew Orr & DOES 1-20**

44. Plaintiffs incorporate all the foregoing allegations of this Complaint as though fully set forth herein.

45. The Subject Taser Strikes employed against Mr. David were not objectively reasonable in light of the facts and circumstances confronting Defendants.

46. The nature and quality of the Subject Taser Strikes were intermediate uses of force, under Ninth Circuit precedent.

47. The government's interest in the Subject Taser Strikes was minimal at best. Mr. David was neither resisting arrest nor attempting to flee, nor was Mr. David posing any threat to Defendants or any other person. Indeed, Mr. David was simply standing idly, surrounded by Defendants when they deployed their tasers into him – one time after the next after the next. Even if Mr. David posed

some conceivable threat to Defendants or others (which Mr. David denies), the Subject Taser Strikes were unreasonably disproportionate to said threat. In reality, as set forth in more detail below, the Subject Taser Strikes were employed against Mr. David in retaliation for him having called Defendants out for their extraordinary discourtesy and aggression.

48.     Balancing the nature and quality of the intrusion of the Subject Taser Strikes on Mr. David's Fourth Amendment rights against the countervailing governmental interests at stake, the Subject Taser Strikes were excessive in violation of the Fourth Amendment.

49.     As a direct and proximate result of the Subject Taser Strikes, Mr. David has suffered severe emotional distress, as well as physical and financial injuries in amounts to be proven at trial.

50.     The Subject Taser Strikes Defendants employed against Mr. David were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Mr. David's safety, health and wellbeing.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

**Unlawful Arrest in Violation of the Fourth Amendment (42 U.S.C., § 1983)**

**By Plaintiffs Lance David & Mayra Najera Against**

**Defendants Barry Ballance, Matthew Orr & DOES 1-20**

51.     Plaintiffs incorporate all the foregoing allegations of this Complaint as though fully set forth herein.

52.     Mr. David was arrested for a purported violation of PC section 148(a)(1) (Resisting Arrest) and booked into the Stanislaus County Jail, where he spent the night away from his three grieving and traumatized children. However, Defendants lacked probable cause to arrest Mr. David for resisting arrest. Mr. David was standing idly in Defendant Orr's grasp – and not resisting arrest nor attempting to flee – when the Subject Taser Strikes were employed against him and he was arrested.

53.     Ms. Najera was also arrested and booked into the Stanislaus County Jail for purported violations of PC section 148(a)(1) (Resisting Arrest) and PC section 243(b) (Battery on Peace Officer).

This is despite the fact that Ms. Najera neither resisted arrest nor battered any SCSD officers during the Subject Incident. Defendants lacked probable cause to arrest Ms. Najera for either of these crimes. The arrest and charges levied against her were a fraud.

54. As a direct and proximate result of his unlawful arrest, Mr. David has suffered severe emotional distress and other injuries in amounts to be proven at trial.

55. As a direct and proximate result of her unlawful arrest, Ms. Najera has suffered severe emotional distress and other injuries in amounts to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CLAIM FOR RELIEF

**Retaliation in Violation of the First Amendment (42 U.S.C., § 1983)**

**By Plaintiffs Lance David & Mayra Najera Against**

**Defendants Barry Ballance, Matthew Orr & DOES 1-20**

56. Plaintiffs incorporate all the foregoing allegations of this Complaint as though fully set forth herein.

57. The Subject Taser Strikes were employed against Mr. David not because Mr. David posed a threat to Defendants or anyone else (he did not). The Subject Taser Strikes were employed against Mr. David in retaliation for him having called Defendants out for their extraordinary discourtesy and aggression. Indeed, Defendant Ballance was already walking away from Mr. David and the other picnickers and only turned back to arrest Mr. David after Mr. David called him out for his discourtesy and aggression.

58. Mr. David calling Defendants out for their discourtesy and aggression was constitutionally protected speech protected under the First Amendment.

59. Defendants' retaliatory conduct against Mr. David – i.e., the Subject Taser Strikes and subsequent arrest – would chill a person of ordinary firmness from continuing to engage in protected activity in the future. Indeed, Mr. David experiences anxiety around law enforcement as a result of the Subject Incident.

60. Defendants' retaliatory conduct against Mr. David was egregious, outrageous and shock the conscience; and/or was committed with oppression and/or malice; and/or was despicable and perpetrated with a willful and conscious disregard for Mr. David's safety, health and wellbeing.

61. As a direct and proximate result of Defendants' retaliatory conduct, Mr. David has suffered severe emotional distress and other injuries in amounts to be proven at trial.

62. Likewise, Defendants did not arrest Ms. Najera because she resisted arrest or because she battered any SCSD officers during the Subject Incident – as they claim. It is clear from witness accounts and video evidence that Ms. Najera did neither of those things. Instead, Ms. Najera was arrested in retaliation for her having spoken up against Defendants Ballance and Orr and for filming their horrific conduct – both of which were squarely within Ms. Najera's First Amendment rights to do. Indeed, Defendant Orr can be heard, throughout the Subject Incident and thereafter, screaming at witnesses who continued to film what was occurring, things like: "You want it next? Keep running your mouth!"

63. Defendants' retaliatory conduct against Ms. Najera – i.e., the arrest – would chill a person of ordinary firmness from continuing to engage in protected activity in the future. Indeed, Ms. Najera also experiences anxiety around law enforcement as a result of the Subject Incident.

64. Defendants' retaliatory conduct against Ms. Najera was egregious, outrageous and shock the conscience; and/or was committed with oppression and/or malice; and/or was despicable and perpetrated with a willful and conscious disregard for Ms. Najera's safety, health and wellbeing.

65. As a direct and proximate result of Defendants' retaliatory conduct, Ms. Najera has suffered severe emotional distress and other injuries in amounts to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTH CLAIM FOR RELIEF

**Failure to Intervene (42 U.S.C., § 1983)**

**By Plaintiffs Lance David & Mayra Najera Against**

**Defendants Barry Ballance, Matthew Orr & DOES 1-20**

66. Plaintiffs incorporate all the foregoing allegations of this Complaint as though fully set forth herein.

67. Defendants had a duty to intervene to stop the First and Fourth Amendment violations of the other Defendants described herein.

68. With respect to Mr. David, Defendants had a duty to intervene to stop Defendants Ballance and Orr from employing the Subject Taser Strikes against Mr. David retaliatorily, even though said conduct was in clear violation of Mr. David's First and Fourth Amendment rights. What is more, Defendants had a duty to intervene to stop the unlawful arrest of Mr. David, because there was no probable cause to suspect Mr. David of resisting arrest. These duties extend to and as between Defendants Ballance and Orr, both of whom could have and should have intervened to stop the other's constitutional violations. All Defendants failed to intervene to stop Defendants' First and Fourth Amendment violations against Mr. David, despite having the opportunity to do so.

69. With respect to Ms. Najera, Defendants had a duty to intervene to stop the other Defendants from unlawfully arresting Ms. Najera without probable cause and in retaliation for having spoken up against Defendants Ballance and Orr and for filming their horrific conduct – both of which were squarely within Ms. Najera's First Amendment rights to do. These duties extend to and as between Defendants Ballance and Orr, both of whom could have and should have intervened to stop the other's constitutional violations. All Defendants failed to intervene to stop Defendants' First and Fourth Amendment violations against Ms. David, despite having the opportunity to do so.

70. As a direct and proximate result of Defendants' failure to intervene to stop the constitutional violations committed against Mr. David and Ms. Najera, they have been damaged in amounts to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIFTH CLAIM FOR RELIEF

### Battery (Cal. Gov. Code, § 820)

### By Plaintiff Lance David Against All Defendants

71. Plaintiffs incorporate all the foregoing allegations of this Complaint as though fully set forth herein.

72. The Subject Taser Strikes employed by Defendants Ballance and Orr against Mr. David were not objectively reasonable in light of the facts and circumstances confronting them.

73. The Subject Taser Strikes employed by Defendants Ballance and Orr against Mr. David were intentional and meant to harm or offend Mr. David.

74. Mr. David did not consent to the Subject Taser Strikes employed by Defendants Ballance and Orr against Mr. David.

75. A reasonable person in Mr. David's position would have been offended by the Subject Taser Strikes employed against him by Defendants Ballance and Orr.

76. As a direct and proximate result of the Subject Taser Strikes, Mr. David has suffered severe emotional distress as well as physical and financial injuries in amounts to be proven at trial.

77. The Subject Taser Strikes Defendants employed against Mr. David were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Mr. David's safety, health and wellbeing.

78. Defendants Ballance and Orr's conduct described herein were committed within the scope of their employment with the County. The County is vicariously liable for state law torts committed by Defendants Ballance and Orr, including their battery against Mr. David, pursuant to California Government Code section 815.2(a).

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SIXTH CLAIM FOR RELIEF

**Violation of the Tom Bane Civil Rights Act Battery (Cal. Civ. Code, § 52.1)**

**By Plaintiffs Lance David & Mayra Najera Against All Defendants**

79. Plaintiffs incorporate all the foregoing allegations of this Complaint as though fully set forth herein.

80. Defendants' Subject Taser Strikes employed against Mr. David, Defendants' unlawful arrest of Mr. David and Defendants' unlawful arrest of Ms. Najera demonstrate their specific intent to violate Mr. David's and Ms. Najera's constitutional rights by threats, intimidation or coercion.

81. Defendants' Subject Taser Strikes employed against Mr. David, Defendants' unlawful arrest of Mr. David and Defendants' unlawful arrest of Ms. Najera were egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable

and perpetrated with a willful and conscious disregard for Mr. David's and Ms. Najera's civil rights, safety, health and wellbeing.

82. As a direct and proximate result of Defendants Bane Act violations described herein, Mr. David and Ms. Najera have been damaged in amounts to be proven at trial.

83. Defendants Ballance and Orr's conduct described herein were committed within the scope of their employment with the County. Pursuant to California Government Code section 815.2(a), the County is vicariously liable for state law torts committed by Defendants Ballance and Orr, including their violations of the Tom Bane Civil Rights Act against Mr. David.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CLAIM FOR RELIEF

### Negligence (Cal. Gov. Code, § 820)

### By All Plaintiffs Against All Defendants

84. Plaintiffs incorporate all the foregoing allegations of this Complaint as though fully set forth herein.

85. Plaintiffs all bring their own negligence claims under different theories of negligence.

86. Mr. David brings his negligence claim against Defendants under the theory that Defendants owed Mr. David a duty of care to act reasonably during the Subject Incident but that they violated said duty when they used excessive force against Mr. David in order to effectuate an unlawful arrest. As a direct and proximate result of Defendants' negligence, Mr. David suffered damages in amounts to be proven at trial.

87. For their part, Ms. Najera, B.N, M.N and L.N. bring their negligence claims under a bystander negligent-infliction-of-emotional distress theory in having witnessed the brutal and excessive force employed by Defendants against Mr. David. These Plaintiffs were all closely related to Mr. David – with Ms. Najera being his wife and B.N, M.N and L.N. being his biological children. These Plaintiffs were also all present at the park during the Subject Incident and witnessed the Subject Taser Strikes employed against Mr. David. These Plaintiffs have all suffered emotional distress as a result of having witnessed the same.

88. As a direct and proximate result of the Defendants' negligence / negligent infliction of emotional distress, Plaintiffs have suffered damages in amounts to be proven at trial.

89. Defendants' negligence was egregious, outrageous and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Plaintiffs' civil rights, safety, health and wellbeing.

90. Defendants' negligence was committed within the scope of their employment with the County. Pursuant to California Government Code section 815.2(a), the County is vicariously liable for state law torts committed by Defendants, including their negligence as it relates to Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JURY TRIAL DEMAND

**WHEREFORE**, Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, as to each claim for relief as follows:

**AS TO THE FIRST CLAIM FOR RELIEF** (Excessive Force in Violation of the Fourth Amendment):
1. For general and special damages according to proof at trial;
2. For punitive damages;
3. For reasonable attorney's fees pursuant to 42 U.S.C. section 1988(b);
4. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
5. For such other relief as the Court deems just and proper.

**AS TO THE SECOND CLAIM FOR RELIEF** (Unlawful Arrest in Violation of the Fourth Amendment):
1. For general and special damages according to proof at trial;
2. For reasonable attorney's fees pursuant to 42 U.S.C. section 1988(b);
3. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
4. For such other relief as the Court deems just and proper.

**AS TO THE THIRD CLAIM FOR RELIEF** (Retaliation in Violation of the First Amendment):
1. For general and special damages according to proof at trial;
2. For punitive and exemplary damages;
3. For reasonable attorney's fees pursuant to 42 U.S.C. section 1988(b);
4. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
5. For such other relief as the Court deems just and proper.

**AS TO THE FOURTH CLAIM FOR RELIEF** (Failure to Intervene):
1. For general and special damages according to proof at trial;
2. For reasonable attorney's fees pursuant to 42 U.S.C. section 1988(b);
3. For costs pursuant to Federal Rule of Civil Procedure section 54(d); and
4. For such other relief as the Court deems just and proper.

**AS TO THE FIFTH CLAIM FOR RELIEF** (Battery):
1. For general and special damages according to proof at trial;
2. For punitive damages; and
3. For such other relief as the Court deems just and proper.

**AS TO THE SIXTH CLAIM FOR RELIEF** (Violation of the Tom Bane Civil Rights Act):
1. For general and special damages according to proof at trial;
2. For statutory penalties;
3. For punitive damages;
4. For reasonable attorneys' fees pursuant to California Civil Code section 52.1; and
5. For such other relief as the Court deems just and proper.

**AS TO THE SEVENTH CLAIM FOR RELIEF** (Negligence):
1. For general and special damages according to proof at trial;
2. For punitive damages; and
3. For such other relief as the Court deems just and proper.

Dated: February 17, 2025                **POINTER & BUELNA, LLP**
                                        **LAWYERS FOR THE PEOPLE**

                                        By: */s/ Adante Pointer*
                                        ADANTE POINTER
                                        PATRICK BUELNA
                                        Counsel for Plaintiffs, Lance David Mayra
                                        Najera, B.N, M.N and L.N.

Dated: February 17, 2025                **POINTER & BUELNA, LLP**
                                        **LAWYERS FOR THE PEOPLE**

                                        By: */s/ Michael A. Slater*
                                        MICHAEL A. SLATER
                                        Counsel for Plaintiffs, Lance David Mayra
                                        Najera, B.N, M.N and L.N.